UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BARBARA JEANNE SILKOWSKI,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

18-CV-6727
DECISION & ORDER

---

On October 10, 2018, the plaintiff, Barbara Jeane Silkowski, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On April 5, 2019, Silkowski moved for judgment on the pleadings, Docket Item 9; on July 3, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on July 24, 2019, Silkowski replied, Docket Item 14.

For the reasons stated below, this Court grants Silkowski's motion and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Silkowski argues that the ALJ erred in three ways. Docket Item 9-1. First, she argues that the ALJ erred in determining her mental residual functional capacity ("RFC") when he improperly discounted the opinions of Silkowski's treating therapist and a consulting psychologist. *Id.* at 22-26. She also argues that the ALJ erred in determining her physical RFC when he improperly found that certain opinion evidence was vague and when he found that other evidence was stale. *Id.* at 13-22. This Court agrees that the ALJ erred and, because the errors inured to Silkowski's prejudice,

remands the matter for proper determination of Silkowski's RFC and reconsideration of her claim for disability benefits.

## II. ANALYSIS

### A. Mental RFC

Silkowski argues that the ALJ erred by improperly substituting his own lay judgment for that of healthcare professionals in determining Silkowski's mental RFC. *Id.* at 22-26. This Court agrees.

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But the opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with claimants and therefore are most able to "provide . . . detailed, longitudinal picture[s] of [claimants'] medical impairments"—are entitled to "controlling weight" so long as they are "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the claimant's] case record."[2] *See* 20 C.F.R. §§ 416.913(a) (2015), 416.927(c)(2) (2015); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).

---

[2] Indeed, an ALJ may not give a treating source's opinion anything less than controlling weight unless he first "explicitly consider[s], *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). "An ALJ's failure to 'explicitly' apply [these] factors [before] assigning [less-than-controlling] weight" to a treating source opinion "is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

3

When Silkowski filed her claim, nurse practitioners and therapists were considered "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions could not "establish the existence of a medically determinable impairment," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006). But an opinion from an "other source" still could "outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the other source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion." *See id.*; *cf.* 20 C.F.R. § 416.902(a)(7) (2017) (expanding list of "acceptable medical sources" to include "licensed advanced practice registered nurse[s]").

Furthermore, an ALJ may not reject or discount the opinion of any medical professional unless other competent medical evidence in the record belies that medical opinion. *See also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)); *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly

4

compelling in order to overcome a medical opinion.'" (quoting *Wagner v. Sec. of Health & Human Servs.,* 906 F.2d 856, 862 (2d Cir. 1990)).

Here, the ALJ found that Silkowski had the following mental RFC:

> [Silkowski can] perform sedentary[3] work . . . except . . . [s]he is limited to unskilled work with simple, rote, routine tasks. She can occasionally interact with the public but cannot perform tandem/teamwork. She can maintain regular schedule.

Docket item 8-8 at 17. The ALJ then found that "[c]onsidering [Silkowski's] age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy that [Silkowski] could perform." *Id.* at 30. Specifically, the ALJ credited the testimony of a vocational expert that Silkowski could find work as a "[b]ench hand," "[t]able worker" or "[a]mpoule sealer." *Id.* at 31.

In reaching this determination, however, the ALJ improperly discounted the opinions of two medical professionals. For example, the ALJ gave only "little weight" and "some weight" to the opinions of the consulting psychologist, Yu-Ying Lin, Ph.D. Docket Item 8-8 at 27. He gave "little weight" to Dr. Lin's May 2015 opinion because it was "not consistent with the record as a whole, including many largely unremarkable mental status examinations." *Id.* And he gave "some weight" to Dr. Lin's August 2015 opinion because it was "not entirely consistent with the record as a whole, such as many largely unremarkable mental status examinations," and was "at odds with the acknowledged activities [of daily living]." *Id.*

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

5

In May 2015, Dr. Lin opined that due to her psychiatric problems—including generalized anxiety disorder, unspecified bipolar disorder, possible posttraumatic stress disorder ("PTSD"), a history of polysubstance abuse, and possible agoraphobia—Silkowski was mildly to moderately limited in making appropriate decisions; moderately limited in maintaining attention and concentration and performing complex tasks independently; and moderately to markedly limited in maintaining a regular schedule and dealing appropriately with stress. Docket Item 8-13 at 443. In August 2015, Dr. Lin opined that Silkowski was moderately limited (defined as "[u]nable to function 50% of the time") in maintaining attention and concentration, attending to a routine, and maintaining a schedule. *Id.* at 468. She also concluded that Silkowski was "unable to participate in any activities except treatment or rehabilitation" for at least six to eight months. *Id.* at 469.

The ALJ also gave "little weight" to the 2015 opinion of Silkowski's treating therapist, Amber Haag, L.C.S.W., because "the limitations [she described were] largely attributed to [Silkowski's] reported seizures" and were "contradicted by [Silkowski's treating neurologist, Joy Burke, M.D.]." Docket Item 8-8 at 28. Based on Silkowski's diagnoses of PTSD, obsessive compulsive disorder, personality disorder, epilepsy, asthma, Hepatitis C, rheumatoid arthritis, and "problems with support group," Ms. Haag, who had treated Silkowski for five years, opined that Silkowski was "[u]nable to meet competitive standards" in the following areas: maintaining regular attendance and being punctual, accepting instructions and criticism from peers and supervisors, responding appropriately to changes in a work setting, dealing with normal work stress, being aware of normal hazards and taking appropriate precautions, dealing with stress of semiskilled

6

and skilled work, and maintaining socially acceptable behavior. *Id.* at 433-35. Ms. Haag concluded that Silkowski would miss more than four days of work per month and that her disabling impairments would last for at least twelve months. *Id.* at 347.

The RFC did not incorporate a number of limitations specified by these two medical professionals. Nor was the ALJ's choice to reject these professionals' opinions based on the medical record or the findings of any other medical professionals. For example, in contrast to the ALJ's finding that Ms. Haag's opinion was "largely attributed to [Silkowski's] reported seizures," Ms. Haag noted that her opinion also was based on Silkowski's "anxiety," which "limits coping skills." *Id.* at 436. And in contrast to the ALJ's finding that Silkowski's treating neurologist, Dr. Burke, "contradicted" Ms. Haag's opinion, Dr. Burke did not offer any opinion about Silkowski's mental functioning; instead, she noted only that because Silkowski had missed appointments, she was "not able to confirm whether she does have seizures or not." *Id.* at 457.

In rejecting the opinions of the medical professionals, the ALJ "arbitrarily substitute[d] his own judgment for competent medical opinion." *Balsamo*, 142 F.3d at 81.[4] And that error prejudiced Silkwoski. The vocational expert testified that Silkowski

---

[4] Even if Ms. Haag's opinion is not strictly a "medical opinion," it is from a healthcare professional, and the ALJ must do more than simply reject it out of hand. Indeed, an ALJ must provide particularly compelling reasons to discount or disregard an opinion from a longtime treatment provider concerning a claimant's mental health. *See Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (explaining that because "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]" (second alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014))). Ms. Haag had treated Silkowski for five years and was likely in the best position of all the medical professionals who offered an opinion to assess Silkowski's mental functioning. *Cf. Estrella*, 925 F.3d at 98 ("'ALJs should not rely heavily on the findings of consultative physicians after a single examination,' . . . [a]

7

could not perform any of the jobs compatible with the ALJ's RFC if Silkowski (a) would be "off task occasionally" and occasionally "unable to maintain focus for two-hour periods"—as opposed to no such limitations in the RFC, Docket Item 8-8 at 148; (b) would be "absent from work more than two times per month"—as opposed to no absence limitation in the RFC, *id.*; or (c) would "occasionally . . . have difficulty returning back from breaks" and "maintaining a regular schedule"—as opposed to being able to maintain a regular schedule in the RFC, *id.* As discussed above, both Dr. Lin's and Ms. Haag's opinions include some form of these apparently work-preclusive limitations.

What is more, both Dr. Lin and Ms. Haag included significant stress-based limitations in their evaluations. The ALJ therefore was required to "make specific findings about the nature of [Silkowski's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work." *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996); *see also Stadler v. Barnhart*, 464 F.Supp.2d 183, 188-89 (W.D.N.Y. 2006) ("Because stress is 'highly individualized,' [individuals with mental illness] 'may have difficulty meeting the requirements of even so-called low-stress jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." (quoting SSR 85-15, 1985 WL 56857 (Jan. 1, 1985)). But that ALJ did not do that here.

In short, the ALJ erred in rejecting Dr. Lin's and Ms. Haag's opinions about Silkowski's mental functioning limitations. The Court therefore remands the matter for

---

concern [that] is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (per curiam))). At the very least, the ALJ was not permitted to dismiss Ms. Haag's opinion based on a factually inaccurate reading of the opinion.

8

reconsideration of these limitations and Silkowski's claim for disability benefits. On remand, the ALJ should either credit the opinions of Dr. Lin and Ms. Haag or cite specific medical evidence as the basis for rejecting them. He also should explicitly address Silkowski's ability to cope with workplace stress.

### A. Physical RFC

Silkowski also argues that the ALJ erred in determining her physical RFC when he erroneously discounted opinion evidence as vague instead of obtaining clarification of the opinion. *Id.* at 18-22. This Court again agrees.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47)). On the other hand, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information

in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48)).

The Social Security Administration's own regulations reflect this duty, stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d)(1). The regulations explain that "every reasonable effort" means that "we will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence," and "at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination." *Id.* § 404.1512(d)(1)(i) (emphasis added).

Here, the ALJ found that Silkowski had the following physical RFC:

> [Silkowski can] perform sedentary work . . . except [s]he uses a cane when walking away from her workstation (i.e. down a hallway). She cannot climb a rope, ladder, or scaffold. She can stand and walk for 2 hours each, but not more than 30 minutes at a time. She requires a sit/stand option that allows for changing position every 60 minutes for up to 5 minutes, without leaving the workstation, in addition[ ] to regular breaks. She can tolerate up to occasional exposure to the cold, extreme heat, wetness, humidity, and concentrated air borne irritants. She must avoid hazards, such as open machinery or unprotected heights. She cannot work in visual isolation. She can frequently stoop and crouch. She can occasionally balance, climb stairs, kneel, and crawl.

Docket item 8-8 at 17.

In reaching this determination, the ALJ gave "some weight" to the 2011 opinion of the consulting physician, George Sirotenko, D.O., because some of the opinion was "consistent with [Silkowski's] activities [of daily living]" but others parts were "vague and not in vocationally-relevant terms." Docket Item 8-8 at 26. Based on his diagnoses of

right-knee osteoarthritis and history of seizure disorder and low back pain, Dr. Sirotenko opined that Silkowski had significant limitations in the following areas: "prolonged standing[;] walking [on] stairs, inclines or ladders[; and] kneeling, squatting or bending." Docket Item 8-7 at 178. He further opined that Silkowski was mildly limited in "repetitive lumbar spine forward flexion, extension, and rotation" and that she "should be given frequent opportunities to alternate between sitting, standing and walking throughout an eight[-]hour day." *Id.* at 178-79.

Dr. Sirotenko also opined that Silkowski requires "frequent opportunities to alternate between sitting, standing and walking." Docket Item 8-7 at 178-79. During the hearing, the ALJ commented on the vagueness of that opinion:

> So, to have frequent opportunities, frequent is not defined in the opinion that I have but frequent here would be two-thirds of the day, so—but it's frequent opportunities to change position. So, my original thought on that was every hour changing position because if you change position every hour and typical breaks from every two hours, every two hours you get a 15-minute break and then another two hours you get a half hour lunch and then you get two hours and a 15-mintue break. If in addition to those regular breaks someone is allowed to change position for up to five minutes every hour, does that fall within the understanding of the definition of frequent? It's hard for me to say.

Docket Item 8-8 at 143-44. The ALJ then resolved the issue by nevertheless defining what was "hard for [him] to say": his RFC limited Silkowksi to work in which she can "chang[e] position every 60 minutes for up to 5 minutes, without leaving the workstation." *Id.* at 17.

But specific RFC assessments like this one must be based on evidence in the record, not on an "ALJ's own surmise." *Cosnyka v. Colvin*, 576 Fed. App'x 43, 46 (2d Cir. 2014) (summary order). For example, in *Cosnyka*, the ALJ "translated" medical evidence suggesting that the claimant would be off task "for ten percent of the workday"

11

into a determination that the claimant would be off task "six minutes out of every hour." *Id.* The Second Circuit remanded the matter because "[t]here [was] no evidence in the record to the effect that [the claimant] would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday." *Id.*[5] Stated differently, without "some explanation" from the ALJ "as to the tether between [an] RFC and the . . . medical opinions or statements from [the claimant], the RFC [is] based upon [the ALJ's] lay analysis of [the claimant's] limitations, which is not permitted and requires remand." *Jordan v. Berryhill*, 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018)). Here, the ALJ provided no such tether between "frequent" and "every 60 minutes for up to 5 minutes." *See* Docket Item 8-8 at 17.

Significantly, the ALJ's decision to fabricate his own limitation with respect to Silkowski's ability to work without changing positions was to Silkowski's disadvantage. The vocational expert testified that Silkowski could not do any of the compatible jobs if she needed to change positions every thirty minutes, *id.* at 147—rather than every hour

---

[5] *See also Tomicki v. Berryhill*, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018) ("[T]he record does not support the ALJ's conclusion that [the claimant] need[ed] to briefly switch between sitting and standing only every thirty minutes. . . . Moreover, there is evidence in the record indicating that [the claimant] need[ed] to change positions every few minutes, not every thirty minutes."); *cf., e.g., Palistrant v. Comm'r of Soc. Sec.*, 2018 WL 4681622, at *5 (W.D.N.Y. Sep. 28, 2018) (holding that the claimant's testimony that he had to alternate between sitting and standing every 20-30 minutes as well as general treatment notes about sitting and standing limitations supported RFC determination that the claimant could alternate between sitting and standing every half hour); *Bryant v. Berryhill*, 2017 WL 2334890, at *4 (W.D.N.Y. May 30, 2017) (holding that "several refences in the record," including the claimant's conflicting reports about the length of time he could sit or stand—some indicating 10 to 15 minutes at a time and others indicating 30 minutes at a time—permitted the ALJ to "reasonably conclude[ ] that [the claimant] could sit for 30 minutes and stand for 15 minutes").

12

as in the RFC, *id.* at 17.  Instead of coming up with his own definition of "frequent," the ALJ was required to recontact Dr. Sirotenko to clarify Dr. Sirotenko's opinion.  If that proved not to be possible, the ALJ was required to base any specific physical RFC limitation on other evidence in the record, not on his own lay analysis of Silkowski's medical needs.

That is particularly so here where Dr. Sirotenko's opinion was supported by other evidence in the record—for example, by the May 2015, January 2016, and September 2016 opinions of Silkowski's treating nurse practitioner ("NP"), Ellen Ingram, N.P.  Based on her eight years of treating of Silkowski for various physical impairments, NP Ingram opined in May 2015 and January 2016 that Silkowski could not walk; stand; sit; push, pull, or bend; see, hear, or speak; or lift or carry for more than 1-2 hours each during an eight-hour work day.  Docket Item 8-13 at 475, 482.  NP Ingram reached the same opinion in September 2016, except that she believed Silkowski was able to sit for 2-4 hours.  *Id.* at 134.  As discussed above, although NP Ingram's opinion is not entitled to controlling weight because it is not from a "treating source" as defined in the Social Security regulations, it merits serious consideration.  NP Ingram had treated Silkowski over a long period of time and therefore was in the best position to offer a longitudinal picture of her physical functioning abilities.  At the very least, the ALJ could not reject NP Ingram's opinion with the simple, conclusory statement that her opinion is not supported by "treatment notes . . . [or] the record as a whole"—particularly where the only purportedly contradictory evidence he cites is the cursory and inconclusive evaluation from Dr. Burke discussed above.  *See* Docket Item 8-8 at 29.

13

Dr. Sirotenko's opinion also is supported by the findings of the consultative physician, Harbinder Toor, M.D. Dr. Toor opined in May 2015 that Silkowski was moderately to markedly limited in standing, walking, squatting, lifting, or carrying; and was moderately limited in "sitting a long time." *Id.* at 451.

In short, because there was an "obvious gap[ ] in the administrative record" as it related to Silkowski's overall physical functioning, the ALJ was obligated to make a reasonable effort to fill that gap before rejecting Silkowski's application for disability benefits. *See Rosa*, 168 F.3d at 79 n.5 (quoting *Perez,* 77 F.3d at 48)). Because the ALJ did not do so and because that error was to Silkowski's detriment, the Court remands the matter so that the ALJ may develop the record and then re-evaluate Silkowski's application in light of the expanded record. The ALJ also should ensure that any specific RFC limitations—such as how frequently Silkowski must be able to change between sitting, standing, and walking—are based on medical evidence in the record, not on the ALJ's "own surmise." *See Cosnyka*, 576 F. App'x at 46.

This Court "will not reach the remaining issues raised by [Silkowski] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 13 is DENIED, and Silkowski's motion for judgment on the pleadings, Docket Item 9 is GRANTED. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:  March 27, 2020
        Buffalo, New York

                                        _/s/ Lawrence J. Vilardo_
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE